# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No.: 17-cr-00036-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. CAMERON ELVAN KORTH,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Kurt J. Bohn, Assistant United States Attorney for the District of Colorado, and Defendant, CAMERON ELVAN KORTH, personally and by counsel, David E. Johnson submit the following Plea Agreement pursuant to D.C. Colo. LCrR 11.1.

## I. PLEA AGREEMENT

The Defendant agrees to plead guilty to Count Two which charges him with false information and threats in violation of 49 U.S.C. § 46507(1).

Upon the Court's acceptance of the Defendant's plea of guilty to Count Two, the United States agrees to dismiss Count One of the Indictment which charges him with maliciously conveying false information in violation of 18 U.S.C. § 844(e).

1

Court's Exhibit

1

The government agrees that a three-point reduction in the offense level for acceptance of responsibility is appropriate pursuant to United States Sentencing Commission, Guidelines Manual, § 3E1.1(a)(Nov. 2016).

## II. ELEMENTS

The Defendant understands that in order to prove his guilt, the government would have to prove beyond a reasonable doubt the following elements of the offense. Defendant understands by his guilty plea, he is admitting that he committed the following acts:

### Count Two:   False Information and Threats, 49 U.S.C. § 46507(1)

First:   The Defendant gave or caused to be given false information about an alleged attempt being made or to be made to violate 49 U.S.C. § 46505;

Second:   The Defendant did so under circumstances in which the information reasonably might be believed;

Third:   The Defendant knew the information was false; and

Fourth:   The Defendant did so willfully and maliciously or with reckless disregard for the safety of human life.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of Count Two is not more than 5 years imprisonment, not more than a $250,000.00 fine, or both; not more than 3 years supervised release; a $100.00 special assessment fee; and restitution to be determined by the Court.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction. Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant, pursuant to § 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§ 6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the advisory guideline computation (§ 1B1.3) or to sentencing in general (§ 1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§ 6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which the conduct relevant to the offense (§ 1B1.3) began is January 16, 2017.

The parties agree that the government's evidence would be: On January 16, 2017, at approximately 8:26 p.m., the FBI was advised of a written bomb threat that was discovered by a passenger onboard United Airlines Flight 231 (UA 231) while in flight from San Diego International Airport to Denver. This passenger was later identified as the Defendant Cameron E. Korth. The note stated, "THERE IS BOMBS ON UA 231 DO NOT ATTEMPT TO LAND." Due to the threat, upon arrival from San Diego, UA 231 was parked on Taxiway EC, an isolated portion of the airfield away from the DIA Main Terminal and concourses. The aircraft landed without incident.

The passengers were evacuated on to waiting buses and the aircraft was swept by Denver Police Department explosive detection canine assets. No explosives were found. The passengers then re-boarded the plane and then proceeded to the gate. While at the gate, Mr. Korth was evaluated and subsequently medically cleared by paramedics from the Denver Health Medical Center because he claimed to be suffering from a panic attack.

Mr. Korth was brought to the Denver Police Office in the Airport Office Building at DIA so he could be interviewed about his involvement in the bomb threat incident. Mr. Korth was advised of his rights and waived them. Upon questioning, Mr. Korth stated he was bipolar and had been prescribed anxiety and pain medications. During the interview, Mr. Korth was asked to provide a written statement about what had happened on UA 231 and he voluntarily did so. As he wrote his statement,

investigators believed there to be similarities in the letter formation of the words in the bomb threat and the words in the statement. Mr. Korth was confronted about these similarities and, after initially stating words to the effect of "I won't say I wrote the threat, but I won't say I didn't," he acknowledged he wrote the bomb threat. He stated that he wrote it in his seat, on paper he found jammed in the seat, took it to one of the two aft lavatories on the aircraft, placed it in the toilet seat cover dispenser, and then pointed it out to one of the flight attendants. Mr. Korth did tell law enforcement that his actions were impulsive and that there was no thought process behind it.

The Defendant admits that, knowing the note was false, he wrote a note to give false information during the air flight from San Diego to Denver, while on board United Airlines flight 231; that the note was about an alleged explosive on the plane and, under the circumstances, might reasonably be believed; and that he did so willfully and maliciously or with reckless disregard for the safety of human life.

## VI. SENTENCING COMPUTATION

The parties stipulate that sentencing in this case will be determined by application of the factors listed in 18 U.S.C. § 3553(a), including the advisory sentencing guidelines issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(1). *See* 18 U.S.C. § 3553(a)(4). The parties acknowledge that, pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005) and related cases, these guidelines are advisory in nature and one of the factors that the Court must consider in imposing sentence.

Any estimation by the parties regarding the estimated advisory guideline

application does not preclude either party from asking the Court to depart from the otherwise advisory guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. (§ 5K2.0).

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§ 6B1.4(d)) The Court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§ 6B1.4 Comm.; § 1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§ 6B1.4(b)).

The 2016 Edition of the Sentencing Guidelines is applicable to this case.

A. The base guideline is § 2A6.1(a)(1), with a base offense level of **12**.

B. The United States believes that there is a **4 level increase** in the offense level for the specific offense characteristic of substantial disruption of public, governmental, or business functions. § 2A6.1(b)(4). The Defendant may argue there should be a **4 level decrease** in the offense level as this was a one-time offense without substantial interference with business functions. § 2A6.1(b)(6).

    C.    There are no victim-related, role-in-offense, obstruction and/or multiple count adjustments which apply.

    D.    The United States believes the adjusted offense level would therefore be **16**. The Defendant believes the adjusted offense level would therefore be **8**.

    E.    If the adjusted offense level is 16, the defendant should receive a 3-level adjustment for acceptance of responsibility. The resulting offense level would therefore be **13**. If the adjusted offense level is 8, the defendant should receive a 2-level adjustment for acceptance of responsibility. The resulting offense level would therefore be **6**.

    F.    The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be III.

    G.    The career offender/criminal livelihood/armed career criminal adjustments would not apply.

    H.    The advisory guideline range resulting from these calculations is 18 to 24 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 12 months (bottom of Category I) to 41 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

The Defendant believes the advisory guideline range resulting from these calculations is 2 to 8 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 0 months (bottom of Category I) to 18 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

I.    Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for an offense level of 13 would be $5,500.00; and if it is an offense level of 6 it would be $1,000.00 to $9,500.00, plus applicable interest and penalties.

J.    Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is not more than three years.

K.    Restitution may be appropriate in this case.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in

formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

### VII. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 4/2/18

_Cameron Korth_
CAMERON ELVAN KORTH
Defendant

Date: 4/2/18

_____
DAVID E. JOHNSON
Attorney for Defendant

Date: 10 April 18

_____
KURT J. BOHN
Assistant U.S. Attorney

10